**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

|  |  |  |
|---|---|---|
| KELVIN OSMIN CANO-PINEDA, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:26-cv-02238-SHL-atc |
| SCOTT LADWIG, New Orleans Field Office Director of Immigration and Customs Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY, Enforcement and Removal Operations; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, | ) | |
| Respondents. | ) | |

**ORDER GRANTING PETITION**

On March 6, 2026, Petitioner Kelvin Osmin Cano-Pineda filed the Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241.  (ECF No. 1.)  Cano-Pineda challenges his continued detention in the West Tennessee Detention Facility as an "arriving alien" without a bond hearing.  (ECF No. 1-3 at PageID 17.)  He seeks immediate release from Respondents' custody.[1]  (Id.)

That same day, the Court issued an order requiring Respondents to respond.  (ECF No. 6.)  Respondents responded eleven days later.  (ECF No. 8.)  Cano-Pineda replied on March 13.

---

[1] As in many other petitions she has filed, Cano-Pineda's counsel has also included a request for attorney's fees and costs under the Equal Access to Justice Act ("EAJA") in her recycled template.  (ECF No. 1 at PageID 7.)  However, as the Court has reminded counsel, a motion for attorney's fees is due "within 30 days of final judgment."  28 U.S.C. § 2412(d)(1)(B).  Under the EAJA, a "final judgment" is a judgment that is final and not appealable; here, that time occurs sixty days after the judgment, as that is the deadline for appeal.  Melkonyan v. Sullivan, 501 U.S. 89, 96 (1991).  Therefore, a motion for costs and attorney's fees ripens ninety days after judgment here, and should not be considered earlier.  See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 15 (W.D. Tenn. filed Jan. 5, 2026).  Counsel is cautioned to review her habeas template with a critical eye before her next filing.

(ECF No. 10.)  For the reasons explained below, Cano-Pineda is entitled to immediate release, and the Petition is **GRANTED**.

## BACKGROUND

Cano-Pineda, a citizen of Nicaragua, entered the United States in March 2022 near Eagle Pass, Texas, and has remained in the United States ever since.  (ECF No. 1-3 at PageID 12.)  He timely applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  (ECF No. 10 at PageID 51.)  He and his two teenage children live in Memphis, Tennessee, where he has worked at Jordan Aluminum for two years.  (Id. at PageID 52.)  He has no criminal history.  (ECF No. 8-2 at PageID 40.)

At an unknown date, Cano-Pineda was apprehended and taken into ICE custody.  (ECF No. 8 at PageID 24.)  He remains at the West Tennessee Detention Facility in Mason, Tennessee.  (Id.)  He requested a bond hearing in Immigration Court, but the Immigration Judge ("IJ") denied his request, citing the recent decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).  (ECF No. 10 at PageID 57.)  The present Petition followed, the crux of which argues that Cano-Pineda was detained without a bond hearing.

Indeed, under recently adopted guidance from DHS and ICE, Cano-Pineda is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was allegedly declared ineligible to be released on bond.  Until recently, however, most noncitizens in this situation were given bond hearings under a different provision, § 1226(a).  See Godinez-Lopez v. Ladwig, No. 25-CV-02962, 2025 WL 3047889, at *1 (W.D. Tenn. Oct. 31, 2025).  Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons.  For example, noncitizens with certain criminal records may not be released on bond.  8 U.S.C. § 1226(c).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission." "Applicants for admission" has been interpreted to mean recent arrivals, including those who have not been "physically present in the United States continuously" for the previous two years. See 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a). Interim Guidance Regarding Detention Authority for Applicants for Admission, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated."). The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission." And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status. As a result, all undocumented immigrants awaiting removal are detained without a bond hearing. This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, Yajure Hurtado, 29 I. & N. Dec. 216, 220 (B.I.A. 2025).

Cano-Pineda faces the risk "of arbitrary and indefinite detention." (ECF No. 1-3 at PageID 16.) His Petition alleges violations of Fifth Amendment due process, the Fourth

3

Amendment protection against unreasonable seizures, and the Eighth Amendment prohibition on cruel and unusual punishment.  (Id. at PageID 6–7.)  He seeks his immediate release.  (Id.)

In response, Respondents contend that Cano-Pineda should be required to exhaust his administrative remedies; that § 1225, not § 1226, applies to him because he was charged as an "arriving alien" in his April 25, 2022 Notice to Appear; that Cano-Pineda should be treated for due process purposes as if stopped at the border; that no Fourth Amendment right was violated because his detention was reasonable; and that, if the Court finds that § 1226(a) applies to him, he should be granted a bond hearing and not immediately released.  (ECF No. 8 at PageID 24–34.)

## ANALYSIS

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  Lopez-Campos v. Raycraft, No. 25-CV-12486, 2025 WL 2496379, at *3 (E.D. Mich. Aug. 29, 2025) (quoting 28 U.S.C. § 2241(c)(3)).  Cano-Pineda challenges his detention without bond as violative of his constitutional rights.  (ECF No. 1 at PageID 6–7.)  The Court first examines whether Cano-Pineda should be required to exhaust his administrative remedies, then it interprets the statutes to determine whether §1225 or § 1226 is applicable, and, finally, it analyzes the due process claim.

## I.    Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner must pursue relief through those administrative processes before seeking habeas relief. McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  When Congress is silent on administrative exhaustion, "sound judicial discretion governs."  Id.  Thus, the doctrine of prudential exhaustion holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse

4

to hear habeas petitions that challenge bond determinations until a petitioner exhausts available administrative remedies.  McCarthy, 503 U.S. at 144.  The Sixth Circuit has previously applied this doctrine to dismiss petitions for lack of jurisdiction.  See Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018).  In the context of immigrant detention, some district courts require detained immigrants to exhaust their administrative remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the courts will review their habeas petitions.  E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S. Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner claims.  Courts have reached these conclusions when (1) "the legal question is fit for resolution and delay means hardship, or (2) exhaustion would prove futile."  Shalala v. Ill. Council on Long Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question.  Contreras-Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21, 2025) (citing Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024)).  Further, when administrative procedures involve "an indefinite or unreasonable timeline," such delays result in hardship.  Id.  If there is a risk of extended, "potentially unlawful detention" during such delay, then exhaustion is excused.  Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not eligible for the relief sought."  Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S. Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

5

Cano-Pineda argues that exhaustion should not be required here because 28 U.S.C. § 2241 lacks an exhaustion rule; exhaustion here would be futile; and the principal questions in this case are legal, not factual. (ECF No. 10 at PageID 54–55.) He contends that the Sixth Circuit only treats exhaustion in cases like this as prudential, so this Court should use its discretion to waive exhaustion. (Id. at PageID 54.) He also argues that exhaustion would be futile given the 2025 decision in Yajure Hurtado that IJs lack jurisdiction to preside over bond hearings. (Id. at PageID 54–55.) He asserts that this Court "has already addressed substantially similar legal questions" in previous cases. (Id. at PageID 55.)

Respondent argues that the Court should dismiss the Petition based on prudential exhaustion, as Cano-Pineda has not appealed to the BIA and received an adverse decision. (ECF No. 8 at PageID 25–27.) He recognizes that Congress has not imposed an administrative exhaustion requirement, and that "sound judicial discretion governs" the Court's decision. (Id. at PageID 25 (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). But he points to the Sixth Circuit's opinion in Rabi v. Sessions, No. 18-3249, 2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018), and certain decisions in the Northern District of Ohio, e.g. Villalta, 2025 U.S. Dist. LEXIS 169688, which required petitioners to appeal to the BIA before seeking habeas relief under "prudential principles of exhaustion." (ECF No. 14 at PageID 25–26.)

Neither 8 U.S.C. §§ 1225 nor 1226 contain a textual exhaustion requirement for immigrants in ICE custody. Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement. And the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases. See Castaneda-Mondragon v. Acuna, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn. Dec. 30, 2025). Therefore, exhaustion may only be required here based on "sound judicial discretion." McCarthy, 503 U.S. at 144. But, exhaustion may be excused if "the legal question

6

is fit for resolution and delay means hardship, or exhaustion would prove futile." Shalala, 529 U.S. at 13.

Cano-Pineda's failure to exhaust is excused. First, the question he poses in the Petition is fit for resolution and undue delay would impose hardship on him. The Parties do not dispute any material facts. (See ECF Nos.1-3 at PageID 12–13; 8 at PageID 24.) Thus, deciding which statute applies to Cano-Pineda's detention is a purely legal question, "which is right in a federal court's wheelhouse." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8. Further, if Cano-Pineda is required to pursue an appeal with the BIA, his appeal process would likely take six months or more. See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)). Bond hearings were designed to prevent prolonged detention during removal proceedings, which are often lengthy. Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted). Therefore, denying Cano-Pineda the chance to have a bond hearing merely because he did not appeal to the BIA[2] may force him "to endure six months or more of potentially unlawful detention and thus would cause him great hardship." Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion here. The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal immigrants who "have been residing in the United States for years." 29 I. & N. Dec. at 220–21. Thus, any appeal would be futile, and exhaustion is excused.[3]

---

[2] There is no evidence that Cano-Pineda has received an appealable decision from the immigration court. Thus, the risk of undue delay is even greater here than in cases where, for instance, an IJ held a bond hearing and denied bond.

[3] Given that exhaustion is waived, Cano-Pineda's additional arguments about exhaustion need not be considered. See Sharpe v. Comm'r of Soc. Sec., No. 20-CV-02732, 2022 U.S. Dist. LEXIS 106311, at *30 n.5 (N.D. Ohio Apr. 1, 2022) (collecting cases where courts in the Sixth Circuit declined to address alternative arguments in the interest of judicial economy).

## II.    Statutory Interpretation

"A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void[,] or insignificant." Corley v. United States, 556 U.S. 303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" Kentucky v. Biden, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207, (1997)).

Custody over noncitizens during removal proceedings is generally governed by two statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and detention of aliens").  Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)    Inspection of applicants for admission
>        . . .
>    (2)    Inspection of other aliens
>        (A)    In general
>            Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  An "applicant for admission" is a noncitizen "present in the United States who has not been admitted." 8 U.S.C. § 1225(a)(1).  Under this section, all applicants for admission "shall be detained." Id. § 1225(b)(2)(A).

Section 1226(a), on the other hand, allows for discretionary detention, providing in relevant part:

> (a)    Arrest, detention, and release

8

> On a warrant issued by the Attorney General, an alien <u>may</u> be <u>arrested</u> <u>and</u> <u>detained</u> pending a decision on whether the alien is to be removed from the United States.  Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1)     <u>may</u> <u>continue</u> <u>to</u> <u>detain</u> the arrested alien; and
> (2)     <u>may</u> <u>release</u> the alien on—
> > (A)     bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .

<u>Id.</u> § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an IJ." <u>Lopez-Campos</u>, 2025 WL 2496379, at *4 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there is a risk of nonappearance or danger to the community." <u>Id.</u> (citing <u>Guerra</u>, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses, § 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[4]

Cano-Pineda argues that ICE's new interpretation of § 1225(b)(2)(A) violates his rights under the Fourth, Fifth, and Eighth Amendments.  (ECF No. 1 at PageID 6–7.)  He argues that 8 U.S.C. § 1226(a) applies to his detention because, even though his 2022 Notice to Appear listed

---

[4] <u>See</u> 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

him as an "arriving alien," he is no longer an arriving alien after being paroled and placed into

"standard [removal] proceedings in Memphis." (ECF No. 10 at PageID 56.) Thereafter, he

argues, "the statutory paradigm governing his detention became § 1226(a)." (Id.) He contends

that, because he entered the United States four years ago and was "apprehended in the interior,"

§ 1226(a) applies. (ECF No. 1-3 at PageID 15.) For these reasons, he seeks his immediate

release. (Id. at PageID 17.)

Respondents argue that § 1225(b)(2)(A), not § 1226(a), applies to Cano-Pineda because

he remains an "arriving alien" and thus is still "an 'applicant for admission' who is treated, for

constitutional purposes, as if stopped at the border." (ECF No. 8 at PageID 25.) As a result, they

assert that "he is subject to mandatory detention" and not entitled to a bond hearing. (Id.)

The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondents' contention

that Cano-Pineda is "seeking admission." Beginning with the titles, the title of § 1225 is

"Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral

for hearing." The title of § 1226(a) is "Apprehension and detention of aliens." Although titles of

statutes are not controlling, they are "tools available for the resolution of a doubt about the

meaning of a statute." Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified).

Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal"

proceedings. But Cano-Pineda was not "arriving" when he was detained far away from the

United States border, after having been in this country for over three years. (ECF No. 1-3 at

PageID 13.) Also, the record does not show that he was eligible for expedited removal

proceedings. Thus, the mandatory detention provision of § 1225 does not apply to him.

Further, the subject matter of § 1225 undercuts Respondents' reading of the statute.

Section 1225 describes the process of inspecting and removing immigrants actively crossing the

border.  See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible.").  And Respondents' reading of § 1225(b)(2)(A) ignores several words and phrases within the statute itself.  "If possible, every word and every provision is to be given effect."  Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012).  But to apply § 1225(b)(2)(A) to Cano-Pineda would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The record does not show that Cano-Pineda was seeking admission at the time of his detention, nor does it show that he had received a determination by an immigration officer that he was "not clearly and beyond a doubt entitled to be admitted."  The language of § 1225(b)(2)(A) makes sense in the context of the border, but not in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for four years.  To interpret "alien seeking admission" using its ordinary meaning but outside the context of the provision, as argued by Respondent, is untenable.

Also, Respondents' interpretation of § 1225(b)(2)(A) would render § 1226(c) superfluous.  That subsection carves out an exception to the general rule that an arrested noncitizen is eligible for a bond.  Under subsection (c), a noncitizen with a certain criminal history must be mandatorily detained.  8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who . . . is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime

11

that results in death or serious bodily injury to another person . . . .").  But, under Respondents'

reading of § 1225, all arrested noncitizens must be detained without bond.  Thus, § 1226(c)

would have no purpose.  Yet, courts must "give effect, if possible, to every clause and word of a

statute."  Duncan v. Walker, 533 U.S. 167, 174 (2001).  Cano-Pineda's reading of the statute is

the only one compatible with the presence of § 1226(c).  What is more, Cano-Pineda has no

criminal record in the United States, so this mandatory detention provision cannot conceivably

be applied to him.  See § 1226(c)(1)(E)(ii).

The plain language of § 1226(a) describes Cano-Pineda's situation.  That section applies

to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the

Attorney General, an alien may be arrested or detained pending a decision on whether the alien is

to be removed from the United States."  8 U.S.C. § 1226(a).  Cano-Pineda was charged with

being removable and detained in West Tennessee.  Thus, the Attorney General has discretion

under this section.  She "may continue to detain [him]" or she "may release [him] on bond."

(Id.)  But the Attorney General may not deny him the bond hearing to which he is entitled.  See 8

C.F.R. § 1236.1(c)(8), (d)(1).

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in

Cano-Pineda's favor, but the Congressional intent behind § 1226(a) is also supportive.  In 2025,

Congress passed the Laken Riley Act, adding a subsection to § 1226(c) to preclude persons with

criminal histories from receiving bond.  Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would

not have added exceptions to the broad rule of § 1226(a) if, as Respondents assert, it intended §

1226(a) to give way to § 1225(b)(2)(A) in all cases.  See Shady Grove Orthopedic Assocs., P.A.

v. Allstate Ins. Co., 559 U.S. 393, 400 (2010) ("The fact that Congress has created specific

exceptions to [a rule] hardly proves that the [rule] does not apply generally.  In fact, it proves the

opposite."). On the contrary, Congress's recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025. After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless." Lopez-Campos, 2025 WL 2496379, at *8 (quoting Maldonado v. Olsen, No. 25-cv-3142, 2025 WL 237441, at *12 (D. Minn. Aug. 15, 2025)).

Thus, given the plain language of §§ 1225 and 1226, the arrest and detention of an illegal immigrant who has been continuously present in the United States for four years is governed by § 1226(a), and is subject to the discretionary bond process in that provision.

### III.   Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." Lopez-Campos, 2025 WL 2496379, at *9 (citing Zadvydas v. Davis, 533 U.S. 678, 690 (2001)). In the context of civil immigration detention, the Sixth Circuit applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen. See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th Cir. 2020). Those factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

Cano-Pineda argues that Respondents violated the Due Process Clause of the Fifth Amendment by detaining him without a bond hearing. (ECF No. 1 at PageID 6.) Respondents,

13

however, assert that Cano-Pineda's due process rights were not violated because, without a lawful entry, he should be "'treated' for due process purposes 'as if stopped at the border.'" (ECF No. 8 at PageID 30 (quoting Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020)).)

Here, because § 1226(a) applies to Cano-Pineda, he is owed the process given to him under that statute. As for the Mathews factors, (1) Cano-Pineda has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community, and, (3) given Cano-Pineda's clean criminal record, it will be difficult for the Government to demonstrate an interest in his detention. Indeed, before he was apprehended, Cano-Pineda was present in the United States for over three years, was employed, and was awaiting an asylum determination. (ECF No. 1-3 at PageID 13.) These facts indicate his ties to the United States, his desire to remain, and his expectation that he would remain free from government custody.

As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside. Thus, Cano-Pineda is entitled to immediate release. See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 WL 401204, at *10 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under § 1226(a)."). Accordingly, his detention under the mandatory detention framework of § 1225(b)(2)(A) violates his due process rights. Thus, consistent with the Court's decision in Godinez-Lopez, and after consideration of the record, Cano-Pineda's petition is **GRANTED**.[5]

---

[5] Because the Petition is granted on other grounds, the Court need not reach the questions of whether Cano-Pineda's detention violated the Fourth or Eighth Amendments.

14

**CONCLUSION**

For the reasons stated above, the Petition is **GRANTED**.  Respondents are ordered to

release Cano-Pineda immediately.  Respondents are **ENJOINED** from pursuing Cano-Pineda's

detention under 8 U.S.C. § 1225(b)(2)(A).  Respondents are further **ORDERED** to file a Status

Report with this Court on or before March 25, 2026, to certify compliance with this Order.

**IT IS SO ORDERED,** this 20th day of March, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE